UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GERNARD DENEZ CHESTNUT,

     Petitioner,

v.                                                                          Case No. 4:18cv120-WS-HTC

RICKY D. DIXON,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Gernard Denez Chestnut filed a fourth amended petition under 28 U.S.C. § 2254, challenging his conviction in the circuit court of Leon County, Florida case number 2010 CF 410. ECF Doc. 42. The matter was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). Upon careful review of the record, the fourth amended petition, the state's response (ECF Doc. 54), and Petitioner's reply (ECF Doc. 57), the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.     BACKGROUND

Petitioner was charged with one count of attempted first degree murder and one count of being a felon in possession of a firearm, both stemming from the shooting of a concert promoter at a Tallahassee bar on the night of February 10,

2010.  ECF Doc. 54-1 at 39.  The bar was hosting a music event for local artists.  For $25, the artist could perform at the bar; however, the venue could not accommodate all the performances before the bar closed.  Petitioner was one of the artists who was unable to perform.  He became irate and shot one of the promoters.

Petitioner was convicted by a jury of the lesser-included offense of attempted second degree murder, *id.* at 195-96, and of the charge of being a felon in possession of a firearm.  *Id.* at 199.  The court sentenced him to life imprisonment on the attempted second-degree murder charge and fifteen years on the felon-in-possession charge, with the sentences running concurrently.  ECF Doc. 54-1 at 6-13.

Petitioner filed the original petition in this case in 2018.[1]  However, since that time, the petition has been amended three times.  Also, after the petition was fully briefed by both sides, Petitioner filed a motion to stay.  ECF Doc. 59.  Upon agreement of the parties, the Court stayed the case in June 2019, ECF Doc. 63, because Petitioner had a pending motion in the state court regarding an alleged lack of a competency hearing before trial.  On July 18, 2022, the Court lifted that stay after the Florida Supreme Court dismissed Petitioner's last pending state action

---

[1] The case has taken a long and convoluted trip through the state court postconviction appeal process, which is discussed at length in Magistrate Judge Kahn's order allowing the fourth amended petition, in which he thoroughly reviewed this history and concluded the fourth amended petition was timely.  ECF Doc. 51 at 3-12.

dealing with the underlying conviction.  ECF Doc. 98.  In the fourth amended petition, Petitioner raises six (6) grounds for relief, three (3) based on trial court error and three (3) based on ineffective assistance of counsel.

## II.    LEGAL STANDARD

### A.    AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief.  28 U.S.C. § 2254.  Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision.  *Id.*  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court

when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## B. Ineffective Assistance of Trial Counsel Claims

As stated above, Petitioner raises three (3) grounds based on ineffective assistance of trial counsel ("IATC"). To succeed on an IATC claim, a petitioner must show (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the

proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the Petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.   DISCUSSION

### A.   Ground One: Trial Court Error and IATC Relating to the Jury Instruction on Lesser Included Offense of Attempted Manslaughter

Petitioner claims the trial court erred in giving an inadequate jury instruction and counsel was ineffective for failing to object to the instruction. Specifically, Petitioner argues the jury instruction on Count One was incomplete because it omitted "the essential element required for the State to prove the necessarily lesser included offense of attempted manslaughter which is proof of 'intentionally

committing criminal acts.'"  ECF Doc. 42 at 5 (capitalization cleaned up).  Petitioner

did not exhaust the trial court error part of this claim and the state courts' resolution

of the IATC portion of the claim was not an unreasonable application of federal

constitutional law.

A substantive challenge to a jury instruction must be raised on direct appeal.

*See Sosnowski v. Dixon*, No. 3:20CV5976-LC/MAF, 2022 WL 2230126, at *10

(N.D. Fla. May 16, 2022), *report and recommendation adopted*, 2022 WL 2209324

(N.D. Fla. June 21, 2022) (citing *Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000)

("The substantive challenges to these [standard] jury instructions are procedurally

barred because Thompson could have raised these claims on direct appeal.") and

*Graham v. State*, 521 So. 2d 1067, 1070 (Fla. 1988) (holding that any claim of trial

court error regarding jury instructions should have been raised on direct appeal)).

Petitioner, however, did not raise this argument in his *pro se* appellate brief on direct

appeal.  ECF Doc. 54-13 at 2-3.  Thus, the claim is procedurally defaulted.

Petitioner did raise the IATC portion of this claim to the state courts in the

amended 3.850 motion, ECF Doc. 46-4 at 3.  While the IATC claim is exhausted, it

fails on the merits.  Relying on *Sanders v. State*, the state court found Petitioner

could not show he was prejudiced by counsel's conduct under *Strickland*.  ECF Doc.

46-4 at 21. As explained below, this was not an unreasonable application of *Strickland*.

In *Sanders*, the Florida Supreme Court made clear there is no prejudice to a defendant based on counsel's failure to object to an incomplete or improper jury instruction on a lesser included offense because "any finding of prejudice would be based on a faulty premise: that a reasonable probability exists that, if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions." *Sanders v. State*, 946 So. 2d 953, 959 (Fla. 2006). Different panels of the Eleventh Circuit have reached a similar conclusion. *See e.g., Bell v. McNeil*, 353 F. App'x 281, 286 (11th Cir. 2009); *Harris v. Crosby*, 151 F. App'x 736, 738 (11th Cir. 2005) ("Harris's assertions that he would have been convicted of the lesser included offense, as opposed to the greater offense, are pure speculation— speculation both that the state trial court would have decided to instruct the jury on the lesser included offense and that the jury, if instructed on the lesser included offense, would have convicted on it instead of the higher offense. That speculation is insufficient to undermine our confidence in the outcome of his trial."). Petitioner is not entitled to habeas relief on this claim.

**B.    Ground Two: Error by State Court in Interpreting Nature of Petitioner's Claim Regarding Intent Required in Attempted Manslaughter Instruction**

In the order denying the amended 3.850 motion, the state court stated, "Contrary to Defendant's assertion that the jury instruction for attempted manslaughter is required to include the element of intent to kill, at the time of his trial on March 7, 2013, the Florida Supreme Court had just ruled otherwise." ECF Doc. 46-4 at 21. However, Petitioner did not argue an "intent to kill" was needed; instead, he argued the instruction should have included the element of "proof of intentional criminal acts." ECF Doc. 42 at 6. Petitioner argues the state court violated his constitutional rights by addressing a claim he never raised. Petitioner exhausted this claim by raising it on direct appeal; however, Petitioner is not entitled to habeas relief.

First, as discussed in Ground One, above, the state court correctly determined Petitioner was not prejudiced by the given jury instruction. Second, a claim attacking the procedures in a collateral proceeding is not grounds for habeas relief. "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (citing *Spradley*, 825 F.2d 1566, 1568 (11th Cir.1987) (involving claims as to errors

at a hearing on the petitioner's 3.850 motion)); *see also Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted).

### C.    Ground Three: Trial Court Error Relating to Petitioner's Requests to Discharge Court Appointed Counsel

Petitioner argues he "filed (3) consecutive motions prior to his trial to discharge his incompetent counsel and represent himself" but "[t]he trial court judge refused to hold any hearing, make 'any' inquiries, or ruling pertaining to his request to discharge court appointed counsel and represent himself."[2]   ECF Doc. 42 at 23 (capitalization cleaned up).   Petitioner claims his Sixth Amendment rights were violated because "no trial proceedings should have been initiated without fulfilling the obligation of the *Faretta*[3] hearing."   *Id.* at 24-25.   Petitioner is not entitled to

---

[2] Petitioner raised this issue in the *pro se* initial brief, but Respondent argues he did not fully exhaust the claim because he never presented the motions to the First DCA or provide factual allegations to support the claim.   Instead, Petitioner merely argued the motions "were prejudicially and blatantly ignored."   ECF Doc. 54-13 at 7 (spelling errors corrected).   Because the Court finds the claim, even if exhausted, is without merit, the Court need not address exhaustion.
[3] *Faretta v. California*, 422 U.S. 806 (1975) (a defendant is entitled to a hearing to determine whether he is competent to represent himself).

relief on this argument because Petitioner had five *Nelson*[4] hearings in state court, and, after the end of each, the court determined counsel was not ineffective, Petitioner agreed to proceed with counsel, and Petitioner stated he did not want to represent himself.   ECF Doc. 54-2 at 27, 40, 64, 78, and 113 (start pages of transcripts of *Nelson* hearings).

For example, Judge Walker, in the hearing on Petitioner's fourth request to discharge counsel, summed up the history of Petitioner's repetitive, frivolous requests in the following colloquy.

> All right.  Let me cut to the chase, Mr. Chestnut, which is I'm going to take the time we need.  I probably do longer *Faretta* inquiries and longer *Nelson* inquiries than any judge in this building probably much to the dismay of the lawyers that appear in front of me.
>
> But I want any review any court if they're reviewing this to understand that at some point something's got to give.  Because, you know, there's a famous quote by the President of the United States, President Bush, that he wasn't going to be wouldn't negotiate or be held hostage by terrorists -- well, I'm not going to be held hostage by individuals that think that they can set a new standard under *Nelson* that all they've got to do is report their lawyer to the Florida Bar no matter how hard they're working for them, no matter how good of a lawyer it is, no matter how honorable that lawyer is all I've got to do is write some letter to the Florida Bar and I can force the Judge, force the court system, to just keep appointing me lawyers.  I can buy my own continuances and I can force the issue.  That's not going to happen.  And I'm not making the

---

[4] *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973) (if a defendant properly informs the trial judge that he wishes to discharge his court appointed counsel due to counsel's ineffectiveness, the judge should inquire into the matter).

finding that I think you're being irrational.  I think I find based on my review of the file and based on my review of what's happened before and what I've heard today that you're manipulating the system. . . . I'm not going to be manipulated.

Transcript begins at ECF Doc. 24-2 at 78.

Judge Walker also made the following findings after removing Petitioner from

the courtroom for belligerent behavior:

> Let the record reflect that Mr. Chestnut was continuing to be belligerent.  Mr. Chestnut clearly is forcing -- he's gone through lawyers more often than I change clothes and, at some point, it gets to be ridiculous.  And the record will reflect not only does everybody in this courthouse know Mr. Shippy is as fine a lawyer as appears in this courthouse.  He has gone through what the record is; I don't need to make a record.  He just made a record in great detail of the work that he's done on this case and how hard he's worked.
>
> The fact in the matter is what we ought to do is have a system that's called a, you know, *Nelson* plus that permits Mr. Shippy to say, Judge, I just don't want to do this anymore because, at some point, I shouldn't be abused simply because I'm regional conflict counsel.  The person that's being abused here is Mr. Shippy by having to stay on the case, not Mr. Chestnut.
>
> I find there's absolutely no reasonable cause to believe Mr. Shippy has done anything but work diligently under the worst of circumstances to represent an ungrateful and difficult client.  And this is not just a case where somebody's short term irritated because they don't like what they hear from their lawyer.  Mr. Chestnut is engaged in a pattern and practice.  They're trying to toss off lawyers, buy himself continuances, and just utter it on the record I don't care what you say I'm going to do whatever I'm going to do and use profanity - and so forth.

> Mr. Chestnut is entitled to a fair trial.  We'll do everything possible to ensure that he receives a fair trial, but he has no right under the U.S. Constitution or the State Constitution to hold the court system, this particular judge or any lawyers present hostage and he will not do so, and I won't be a party to it.

ECF Doc. 54-2 at 100-02.

Fourteen days later, Judge Walker called Petitioner to the courtroom and told him he was denying the motion to discharge defense counsel and appoint new counsel.  ECF Doc. 54-2 at 107.  He explained Petitioner's three options: hiring his own lawyer to replace appointed counsel; representing himself; or retaining appointed counsel to represent him.  *Id.* at 107-08.  After further belligerent and non-responsive conduct by Petitioner, he eventually agreed he did not want to represent himself and agreed to keep being represented by appointed counsel.  *Id.* at 109.

Nonetheless, Petitioner continued to file motions to discharge counsel seemingly every time he and counsel disagreed as to strategy.  He had another *Nelson* hearing on September 13, 2012, before a different judge, where he argued counsel was ineffective for not moving to suppress a photo lineup.  The judge again found counsel was not acting ineffectively and gave Petitioner the same three choices going forward.  ECF Doc. 54-2 at 128.  After making several non-responsive and argumentative comments, Petitioner again agreed he would rather proceed with appointed counsel rather than represent himself.  *Id.*

In light of the trial judges' consistent findings that defense counsel was not acting ineffectively and Petitioner's consistent choice to proceed with appointed counsel rather than represent himself, Petitioner has not shown the state courts erred in declining to find Petitioner was entitled to a *Faretta* hearing.

### D.    Ground Four: Trial Court Error in Allowing Introduction of Cellphone Records Without Lawful Premises or Predicate

At trial, witness Mary Ash testified the day before the shooting, at another gig, an artist who identified himself as "Jungo" gave her his cell phone number.  ECF Doc. 54-5 at 80.  She testified, the next day, she saw the same person she knew as "Jungo" at the Big Daddy open-mike night and saw him have an altercation with the victim shortly before hearing shots.  *Id.*  She testified, after the shooting, she met with Tallahassee Police Department investigators and gave them the number "Jungo" had given her.  *Id.* at 80-81.  Defense counsel moved to exclude the cellphone records because the witness had not identified Petitioner as the person she knew as "Jungo."  *Id.* at 88-89.  The trial judge denied the motion, *id.* at 90, and a police cellphone records analyst was allowed to testify that a search of cellphone records revealed the subscriber's name associated with the phone number was "Gernard Chestnut."  *Id.* at 96.

Petitioner argues his constitutional rights were violated because "the prosecutor never placed a witness on the stand to identify the Petitioner as [the] person who provided them any cellphone number."  ECF Doc. 42 at 9 (grammar and capitalization cleaned up).  Respondent counters that (1) Petitioner failed to fairly present this issue as a federal claim and so has not exhausted it; (2) this claim presents a pure issue of state law that is not cognizable on federal habeas review and (3) even if Petitioner had exhausted this issue and it was cognizable in habeas, the trial judge was not unreasonable in finding sufficient evidence was presented at trial to establish a link between "Jungo," the phone records, and the defendant.  ECF Doc. 54 at 34-35.  The undersigned agrees with all three arguments.

Petitioner failed to present this argument as a federal claim in state court.  In the *pro se* appellate brief, Petitioner raised a similar issue involving the admission of the cellphone records but cited no federal case law, constitutional amendments or statutes.  He relied solely on Florida Statute 90.105.  Also, while he made a passing reference to "due process," he did not make any other reference to the federal constitutional rights he invokes in this federal petition.  Reference to a broad constitutional principle without argument is not sufficient for exhaustion.  *See e.g., Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342 (11th Cir. 2012) ("Simply referring to a constitutional right of confrontation of witnesses is not a sufficient reference to a

federal claim."). This claim is, thus, procedurally defaulted because it must be raised on direct appeal in Florida. Fla. R. Crim. P. 3.850(b), (c). Regardless, a "state law claim couched in federal constitutional law is not cognizable on federal habeas." *Muldrow v. Sec'y, Dep't of Corr.*, 2020 WL 6565080, at *3 (M.D. Fla. Nov. 9, 2020) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)).

Finally, even if Petitioner had exhausted this claim and it was cognizable on habeas review, it would fail on the merits because the trial judge was reasonable in admitting the evidence. Florida Statute 90.105 provides "the court shall determine preliminary questions concerning . . . the admissibility of evidence" and "[w]hen the relevancy of evidence depends upon the existence of a preliminary fact, the court shall admit the proffered evidence when there is prima facie evidence sufficient to support a finding of the preliminary fact." The admission of the evidence in this case met this standard. As the trial court explained, there were at least three other witnesses who identified Petitioner as "Jungo" at the trial. ECF Doc. 54-5 at 90. Those witnesses were LaToya Redding, a hostess at the bar in charge of keeping a list of the performers that wanted to perform, ECF Doc. 54-4 at 89, Jessie Haynes, who was at the bar that night, *id.* at 117-22, and Adaryll Lee, the victim's business partner, ECF Doc. 54-5 at 35-41. Also, the victim testified he knew the shooter as a

performer named "Jungo" who had attended with another performer that the victim knew as "Finesse." Petitioner is not entitled to habeas relief on this claim.

### E.    Ground Five: IATC for Failing to Suppress Photographic Line-Up

Petitioner argues trial counsel was ineffective for failing to move to suppress "the impermissibly suggestive photo line-up."[5] ECF Doc. 42 at 12. Specifically, he argues several witnesses gave police officers a general description of the suspected shooter as wearing a "black hoody," and the police officers then placed the Petitioner in a photographic line-up show up as the only person wearing a black hoody jacket. Petitioner argues "this is tantamount to directly telling the witness which person's picture to pick out and tainted and corrupted the identification evidence beyond reliability." *Id.* He also notes the witnesses were friends and appeared to have been coached to change their description of the shooter to include a black hoody. *Id.*

Petitioner exhausted this claim by raising a similar claim as Issue VII in his *pro se* initial brief on appeal.[6] ECF Doc. 54-13 at 12-13. The First DCA's rejection

---

[5] A copy of the photo line-up is at ECF Doc. 54-9 at 10.

[6] While it is true that "with rare exception ineffective assistance of counsel claims are not cognizable on direct appeal" in Florida, *Gore v. State,* 784 So.2d 418, 437 (Fla. 2001), a claim of ineffective assistance of counsel "may be raised on direct appeal . . . where the ineffectiveness is apparent on the face of the record." *Id.,* at 437–438. This is what Petitioner argued to the First DCA here. ECF Doc. 54-13 at 12 (arguing trial counsel was "ineffective on the face of the record"). On the other hand, Petitioner's attempt to raise this claim in a second 3.850 motion was procedurally barred as a successive 3.850 motion. ECF Doc. 50-1 at 26. And, as noted above, he

of this claim was not unreasonable. Petitioner fails to point to any evidence showing the witnesses were told the police were looking for a man who fit any sort of description or that a black hoody was an important part of the police search. General, conclusory and speculative claims are insufficient to support a basis for federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

The testimony at trial contradicts rather than supports Petitioner's claim. First, Jessica Daley, a bartender at the event that night, testified she served water several times during the night to the shooter, who was wearing "a white shirt and a black beanie," ECF Doc. 54-4 at 53, and she witnessed him shooting the victim at the end of the evening. *Id.* at 50-51. She identified Petitioner in open court as the shooter. *Id.* at 55. She testified when she was showed a photo line-up the investigator told her the shooter may not be in the pictures, and she should "just see what you think…If you think one of these people is the suspect." *Id.* at 58. She identified Petitioner from the line-up. *Id.*

---

only raised one issue (involving the manslaughter jury instruction) in his first 3.850 motion. ECF Doc. 46-4. Thus, the only way he exhausted this issue was in his *pro se* initial appellate brief.

Witness Latoya Redding testified she spoke several times with a person named "Jungo" who she identified as being Petitioner in open court. She saw the person wearing a white shirt and having an altercation with the victim, and then heard multiple shots even though she could not see the gun. *Id.* at 91-93. She testified he was wearing "a white shirt and some jeans." *Id.* at 102. She testified she was shown a photo line-up and picked out "the person that [she] saw in the white shirt in the altercation with Mr. Gee." *Id.* at 103. She did not mention a black hoody, or any attempt to coach her prior to the line-up.

Witness Jessie Haynes testified she first saw the shooter after it was announced no more performers would go on. He was shouting for the DJ to play his song, to play "Jungo." *Id.* at 117. She identified Petitioner in open court as being that person. *Id.* She also testified, the shooter "had a white T-shirt on, a black hoody, and he had gold teeth in his mouth." *Id.* at 121. She testified police brought her in to view a photo line-up where the investigator read her an affidavit telling her "the person may or may not be there and that you shouldn't pick out anybody unless you were sure." *Id.* She testified she picked Petitioner, who she identified in open court, from the photo line-up. *Id.*

Petitioner's speculation that police coached the witnesses is simply not supported and thus any attempt by counsel to object would have been summarily

dismissed.  Counsel can neither be ineffective nor his performance prejudicial in failing to raise a meritless claim.  *See e.g., Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020).  Petitioner has not shown he is entitled to habeas relief on this claim.

### F.      Ground Six: IATC for Failing to Introduce Evidence of Individual Known as "Jungo" Identified as Jarielle Russell.

Petitioner claims trial counsel was ineffective for failing to call an individual named Jarielle Russell, a hip hop rap artist, who used "Jungo" as his alias and had the name tattooed on his chest, as a witness, or present evidence about Russell at the trial.  ECF Doc. 42 at 13-14.  Petitioner is not entitled to relief on this claim because there is no evidence in the record to support the claim.  *See* 28 U.S.C. § 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim ….").

Although Petitioner claims, "counsel had pictures and depositions resulting from interviews with this person yet failed to present them at trial," ECF Doc. 42 at 13-14, no such pictures or depositions are in the record.  Petitioner does not even explain his own basis for knowing such information about Russell.  "Federal habeas review is not the time to embark on a 'fishing expedition' in 'an effort to find evidence to support a claim.'"  *Ferraro v. Inch*, 2021 WL 1723265, at *4 (S.D. Fla.

Apr. 30, 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1271 (11th Cir. 2014)).  And, "without any allegations . . . how such evidence should have been presented to the jury, or why Counsel's approach was unreasonable, Petitioner has not met his burden under either prong" of *Strickland*.  *Id.*

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."   *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007).   Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.*  Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing.  *See Schriro*, 550 U.S. at 574.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28

U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial

of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

483-84 (2000) (explaining how to satisfy this showing) (citation omitted).

Therefore, it is also recommended that the district court deny a certificate of

appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final

order, the court may direct the parties to submit arguments on whether a certificate

should issue."  Rule 11(a), Rules Governing 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and

recommendation.

It is respectfully RECOMMENDED:

1.      That the fourth amended petition under 28 U.S.C. § 2254, challenging

the conviction in *State v. Chestnut*, Leon County, Florida case number 2010 CF 410,

ECF Doc. 42, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

DONE at Pensacola, Florida, this 30th day of August, 2022.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.